IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


BRANDON BLACKMON,                        )
                                         )
                    Plaintiff,           )      **CIVIL ACTION**
                                         )
v.                                       )      No.  05-1029-MLB
                                         )
THE BOARD OF COUNTY COMMISSIONERS        )
OF SEDGWICK COUNTY, KANSAS,              )
et al.,                                  )
                                         )
                    Defendants.          )
_____)


<u>**MEMORANDUM AND ORDER**</u>

     This case comes before the court on the individual defendants'
motions to dismiss Blackmon's substantive due process claims.  (Docs.
47, 54, 65).  On January 30, 2006, the court entered an order denying
defendants' motions to dismiss without prejudice.  (Doc. 79).  The
court required plaintiff to file an amended complaint and allowed the
parties to supplement their briefing based on plaintiff's new
allegations.  Plaintiff filed his amended complaint on March 9, 2006.
(Doc. 87).  The parties subsequently submitted supplemental briefs.
(Docs. 98, 99, 100).  On July, 19, 2006, this court dismissed various
defendants based on an agreed order submitted to the court by the
parties.  (Doc. 110).  The court is now prepared to rule on the motion
to dismiss the remaining defendants.  For the reasons herein,
defendants' motions to dismiss are granted in part and denied in part.

I.   **FACTS**[1]

On May 24, 1996, the Sedgwick County District Attorney's Office filed two cases against plaintiff Brandon Blackmon: one for alleged rape; and the other for a misdemeanor criminal damage to property. On December 6, 1996, Judge Burgess revoked Blackmon's bond for failure to appear and issued a bench warrant.  Blackmon was detained at the Juvenile Detention Facility (JDF) in Wichita, Kansas.  At the time, Blackmon was only ten years old, was 4' 10" tall and weighed about 95 pounds.[2]  Blackmon was showing signs of depression, acting anxious, afraid and unusually embarrassed.  The staff at JDF placed Blackmon in the girls dorm because of his "age, size and charge."  The boy residents in the other dorms would "tower" over Blackmon.  Blackmon was released on December 19, 1996, and ordered to appear on January 30, 1997.

On January 31, 1997, Judge Bacon revoked Blackmon's bail after making a determination that Blackmon, now age 11, was a "flight risk." Blackmon was again placed in confinement at JDF.  Judge Bacon ordered Blackmon to be detained at the Juvenile Residential Facility (the Shelter), a less secure facility, but Blackmon was instead placed at JDF.  At the time of this detention, Blackmon was only eleven years old.  Blackmon was crying, showing signs of depression, anxiety and fear. This time, Blackmon was placed in the boys' dorm.  (Doc. 87 at 12-13).

---

[1] The facts are largely taken from the First Amended Complaint. The court assumes the facts to be true for purposes of defendants' motions.

[2] Balckmon's date of birth is January 29, 1986.

On February 8, 1997, at 8:40 p.m., defendant Tyson approved a request that Blackmon be placed in mechanical restraints due to threatened self-destructive behavior. Blackmon continued to make threats to harm himself and was taken to the recreation area and placed in a restraint chair. At 9:00 p.m., defendant Taylor was called to assess Blackmon. Defendant Sutton was also called and approved extended use of handcuffs and leg irons. Defendant Taylor arrived to calm Blackmon and the restraints were removed after approximately thirty-five minutes. (Doc. 87 at 13-14).

On February 9, 1997, at 7:15 p.m., defendant Tyson noted that Blackmon continued to verbalize self-destructive intentions. Defendant Fitzjarrald was informed and advised placement in the restraint chair if the behavior continued. At 7:35 p.m., defendant Tyson, along with two other employees, placed mechanical restraints on Blackmon and escorted him to the intake area where he was placed in a restraint chair. Defendant Sutton approved the extended use of restraints if the chair did not successfully "de-escalate" Blackmon. After Blackmon's behavior continued Fitzjarrald was contacted to come in and evaluate the situation. Blackmon was restrained for one hour and fifteen minutes. (Doc. 87 at 14-16).

On February 13, at 6:20 p.m., defendant Tyson again placed Blackmon in the restraint chair because he resisted staff members and refused to return to his room after an altercation with another boy. He was placed in the restraint chair for twenty-five minutes. At 8:00 p.m., Blackmon was banging his head on the wall and would not assure Tyson and Taylor that his behavior would cease. Blackmon was again placed in the chair for one hour and twenty minutes. Doc. 87 at 16-

17).

On March 10, three days after Judge Bacon adjudicated Blackmon guilty of rape, defendant Gutierrez found Blackmon crying and stating that he wanted to kill himself and bang his head.[3]  Blackmon was placed in the restraint chair for forty-five minutes. (Doc. 87 at 17-18).

On March 12, Blackmon was again adjudicated a juvenile offender based upon the heinous offense of writing in wet cement.  Five days later, on March 17, Blackmon was banging his head on the wall. Blackmon was placed in the chair and put in a paper gown for at least fifteen minutes.[4]  (Doc. 87 at 18-19).

On March 24, at 8:15 p.m., defendant Tyson noted that Blackmon was out of control and non-complaint with directives.  Tyson ordered Blackmon to be put in mechanical restraints and a paper gown.  He was placed in a holding room.  At some point, Blackmon was returned to his room and Tyson discovered Blackmon with socks around his neck at 8:40 p.m.  Blackmon was then placed in a paper gown and secured in the restraint chair for one hour.  Defendant Sutton was consulted and she approved the extended use of mechanical restraints. (Doc. 87 at 19-20).

Blackmon was placed in Providence Hospital on March 25 where he was diagnosed with an adjustment disorder and depression.  Blackmon did not exhibit any signs of self-destructive behavior while at the

---

[3] Blackmon's adjudication was ultimately reversed by the Supreme Court of Kansas.  In the Matter of B.M.B., 264 Kan. 417, 955 P.2d 1302 (1998).

[4] The individual who placed Blackmon in the restraint chair on this occasion is no longer a named defendant.

hospital.  After leaving the hospital on April 4, Blackmon was again confined in JDF.  During this time, Blackmon returned to self-destructive behavior, including severe head-banging, strangulation attempts, altercations and oppositional behavior. (Doc. 87 at 20-21).

On May 1, defendant Hittle found Blackmon scratching himself and attempting to tie a sheet around his neck.  After Blackmon did not comply with Hittle's instructions, he was placed in the restraint chair.  Hittle attempted to contact defendant Fitzjarrald, but she was unavailable.  Hittle noted that Blackmon "finally decide[d]" to cooperate and then was removed from the chair.  The period of time during which Blackmon was restrained is unknown. (Doc. 87 at 21).

Blackmon's amended complaint alleges that the individual defendants acted with deliberate indifference to his substantive due process rights to be free from harm, to placement in a safe environment and to receive appropriate treatment.  The individual defendants are seeking qualified immunity.

## II.  Motion to Dismiss Standards: FRCP 12(b)(6)

The standards this court must utilize upon a motion to dismiss are well known.  This court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive. See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000); Robinson v. Kansas, 117 F. Supp.2d 1124, 1129 (D. Kan. 2000).  All well-pleaded facts and  the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. See Ford, 222 F.3d at 771; Davis v. United Student Aid Funds, Inc., 45 F. Supp.2d 1104, 1106 (D. Kan. 1998).

-5-

Conclusory allegations, however, have no bearing upon this court's consideration.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"); Overton v. United States, 74 F. Supp. 2d 1034, 1041 (D. N.M. 1999) (citing Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989)). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims.  See Robinson, 117 F. Supp.2d at 1129.

## III. ANALYSIS

Blackmon seeks monetary damages pursuant to 42 U.S.C. § 1983. That statute renders liable any person who "under color of [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Section 1983 was enacted to provide protections to those persons wronged by the misuse of power.  While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed.  See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them.").

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [the court] will also review this defense on a motion to dismiss" but will "not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Peterson v. Jensen, 371 F.3d 1199,

1201-02, (10th Cir. 2004) (quoting <u>Currier v. Doran</u>, 242 F.3d 905, 917 (10th Cir. 2001)).   In the past, the Tenth Circuit has required a plaintiff to meet a heightened pleading standard upon a defendant's assertion of qualified immunity.   <u>Currier</u>, 242 F.3d at 911.   The Tenth Circuit in <u>Currier</u> held, however, that this heightened pleading requirement does not survive the Supreme Court's opinion in <u>Crawford-El v. Britton</u>, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). <u>Id.</u> at 916.

The framework for reviewing a qualified immunity defense is well settled.   The first step is to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998).   In other words, the court must determine "whether plaintiff's allegations, <u>if true</u>, establish a constitutional violation." <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002).

> The "ultimate" standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." <u>Ruiz v. McDonnell</u>, 299 F.3d 1173, 1183 (10th Cir. 2002) (quotations and citations omitted). It is well settled that negligence is not sufficient to shock the conscience. <u>Id.</u> at 1184. In addition, " 'a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.' " <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504, 528 (10th Cir. 1998) (quoting <u>Uhlriq v. Harder</u>, 64 F.3d 567, 574 (10th Cir. 1995)). "Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." <u>DeAnzona v. City and County of Denver</u>, 222 F.3d 1229, 1235 (10th Cir. 2000).

<u>Moore v. Guthrie</u>, 438 F.3d 1036, 1040 (10th Cir. 2006).

"Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the

-7-

right allegedly violated was clearly established at the time of the conduct at issue." Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 n.6 (10th Cir. 1998). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Blackmon has asserted that his right to be safe, free from harm and provided adequate care was violated and that this right was clearly established at the time of the violation. In Yvonne L., By and Through Lewis v. New Mexico Dept. of Human Services, 959 F.2d 883 (10th Cir. 1992), the circuit held "that children in the custody of a state had a constitutional right to be reasonably safe from harm; and that if the persons responsible place children in a foster home or institution that they know or suspect to be dangerous to the children they incur liability if the harm occurs." 959 F.2d at 893. Blackmon was involuntarily placed in state facilities. Milonas v. Williams, 691 F.2d 931 (10th Cir. 1982), cert. denied, 460 U.S. 1069, 103 S. Ct. 1524, 75 L. Ed.2d 947 (1983), determined that "juveniles involuntarily placed in a private school by state agencies or courts had liberty interests protected by the Due Process Clause of the Fourteenth Amendment; specifically, [s]uch [a] person has the right to reasonably safe conditions of confinement." Yvonne L., 959 F.2d at 892-93 (citing Milonas, 691 F.2d at 942). Specifically, Milonas held that juveniles "have the right to reasonably safe conditions of

-8-

confinement, the right to be free from unreasonable bodily restraints, and the right to such minimally adequate training as reasonably may be required by these interests."   691 F.2d at 942.

Defendants assert that Milonas supports their claim of qualified immunity since Blackmon was only placed in restraints to protect himself.  (Doc. 98 at 23).  The Milonas case, however, is factually different from this case.  None of the juveniles in Milonas were ever placed in mechanical restraints or in a paper gown.  The juveniles in Milonas were placed in an isolation room and not restrained while in the room.  Moreover, the court found that the isolation room could be used for "physically violent" boys and that physical force only be allowed when a boy is violent, immediately dangerous to himself or physically resisting institutional rules.  Even though these practices were not permanently enjoined, the trial court and the Tenth Circuit upheld the jury's decision that the boys' rights were violated by the excessive amount of force used on certain occasions.  See id. at 934-35.  Milonas is legally different, too.  The case was tried to a jury where facts were fully developed, not on a motion to dismiss based on qualified immunity grounds.  Notwithstanding these differences, defendants apparently expect the court to conclude Milonas announces a global rule that use of restraints does not violate a juvenile's constitutional rights and that the use of physical restraints on multiple occasions for periods up to and over one hour on an eleven year old child was constitutionally appropriate.  The court will not do so on a motion to dismiss.

The court concludes that the facts as alleged by Blackmon in his amended complaint, if true, sufficiently state a cognizable

-9-

substantive due process violation.  Defendants' continued failure to address Blackmon's mental health needs and the repeated use of restraints on a young child without any indication that other options were explored is truly conscience-shocking.[5]  See <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 853, 118 S. Ct. 1708, 1720 (U.S. 1998)("When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking.") Defendants' alleged conduct substantially increased Blackmon's mental deterioration and need for hospitalization.  Further, the court finds that the rights to be safe, free from harm and provided adequate treatment, were clearly established at the time of the alleged violation.

The court must now look to each individual defendant to determine whether he or she "acted under color of state law and caused or contributed to the alleged violation." <u>Smith v. Barber</u>, 195 F. Supp.2d 1264, 1274 (D. Kan. 2002); <u>Currier v. Doran</u>, 242 F.3d 905, 919 (10th Cir. 2001).  While Blackmon is not held to a heightened pleading standard, he "must show the defendant personally participated in the alleged violation ... it is not enough for a plaintiff merely to show

---

[5] While both parties have focused their submissions on Blackmon's numerous occasions in restraints, the allegations in the amended complaint are not so limited.  Blackmon has also alleged that defendants violated his rights by failing to give him proper mental health care, failing to identify that the restraint chair use was improper, failing to recommend removal from the secure facility and failing to adequately train staff at the facility.  Blackmon has also alleged that the use of the restraint chair violated state law and regulations.  While the court has discussed each occasion of restraint with particularity, the use of the chair must be evaluated in light of the totality of the circumstances, particularly at the motion to dismiss stage of the case.  The picture may, or may not, change as to some or all of the defendants at the summary judgment stage.

a defendant was in charge of other state actors who actually committed the violation." In addition, Blackmon "must establish a deliberate, intentional act by the supervisor to violate constitutional rights." Id. at 1274. "This standard may be satisfied by a showing that a defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." Id.

### A.    MASTERSON

Defendant Masterson served as the Youth Services Administrator for the Sedgwick County Department of Corrections. The amended complaint has alleged the following pertaining to defendant Masterson, "[u]pon information and belief, those senior managers and staff who participated in the decision to alter administratively the Court's order as to the facility in which Brandon was to be detained on January 31, 1997 are defendant Masterson, Lynda Lambert (now deceased), defendant Sutton, and either or both defendants Fitzjarrald and Taylor." This non-specific and conclusory allegation is insufficient to state a claim. Masterson's unspecified involvement in the placement decision, by itself, does not rise to a violation of Blackmon's constitutional rights.

The court finds that Blackmon's complaint fails to state a claim against Masterson. Accordingly, Masterson's motion to dismiss is granted.

### B.    SUTTON

Defendant Sutton served as JDF Facility Manager during the relevant times. Sutton approved the extended use of physical restraints on Blackmon on February 8,9, and March 24. Blackmon also alleges that Sutton failed to review the other incidents of restraint.

-11-

"A plaintiff may show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, [her] exercise of control or direction, or [her] failure to supervise." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)(internal citations omitted). Blackmon has alleged that Sutton knew and approved of three of the occasions of physical restraint and that she should have reviewed the other occasions and failed to do so.  Blackmon has also alleged that Sutton failed to offer alternative methods to assist staff in dealing with Blackmon and determine the cause for his outbursts.  These allegations are sufficient to state a claim against Sutton.

Sutton's motion to dismiss on the basis of qualified immunity is denied.

### C.   TYSON

Defendant Tyson was the supervisor who approved and/or was involved in placing Blackmon in restraints on four occasions.  Supra, p. 2-4.  Tyson concludes that she is entitled to qualified immunity on every instance of restraint.  The court reminds defendant Tyson that at this stage, Blackmon's allegations are viewed in the light most favorable to Blackmon.  While ultimately, at summary judgment or trial, the court or the jury may determine that Tyson's actions were reasonable, the court cannot, on a motion to dismiss, determine that restraining an eleven year old boy on numerous occasions for prolonged periods does not violate his constitutional rights.  While the complaint and its attached documents reference Blackmon's behavior as self-destructive, the documents also show the lack of any attempt to find medical help for a child that was experiencing depression and

-12-

suicidal thoughts.[6]  Rather, the only apparent answer to Blackmon's repeated attempts at self-mutilation was to restrain him for long periods of time. The court finds that these allegations are sufficient to state a claim against Tyson.

Tyson's motion to dismiss on the basis of qualified immunity is denied.

### D. GUITERREZ

Defendant Guiterrez was a Youth Care Supervisor at JDF. Guiterrez was involved in the incident that occurred on March 10, 1997, three days after Blackmon had been adjudicated a juvenile. Guiterrez talked to Blackmon who expressed a desire to hurt himself. Blackmon, however, was not actively attempting to hurt himself. Guiterrez determined to place Blackmon in the restraint chair. Guiterrez apparently failed to contact any mental health professionals prior to placing Blackmon in the restraint chair.  Blackmon was placed in the restraint chair for forty-five minutes.  The court finds these allegations sufficient to proceed against Guiterrez.  While Blackmon made verbal threats, Guiterrez did not observe any self-destructive behavior from Blackmon nor did Guiterrez attempt to seek a mental professional to talk to Blackmon.  Guiterrez' immediate response was

---

[6]  In support of their conclusion that defendants should be afforded qualified immunity, defendants argue "[t]he short-term, relatively comfortable restraint of a person who poses a suicide risk until a mental health professional can evaluate the risk is not unconstitutional."  (Doc. 98 at 27)(citing Beyer v. City of Johnson City, 2003 WL 23737298 at *5 (E.D. Tenn.).  The allegations in this case state that defendants failed, on numerous occasions, to seek medical help for Blackmon.  Moreover, the court in Beyer had extensive knowledge of the restraint chair and the position of each restraint on the chair.  This court has no knowledge of the characteristics of this particular restraint chair but is hard-pressed to assume that a chair which retrains movement can be "comfortable."

to place him in the restraint chair for forty-five minutes.

Guiterrez' motion to dismiss on the basis of qualified immunity is denied.

### E.   HITTLE

John Hittle was a supervisor at JDF.  On May 1, 1997, defendant Hittle found Blackmon scratching himself and attempting to tie a sheet around his neck.  Hittle placed Blackmon in the restraint chair for an unknown amount of time.  Hittle's notes state that Blackmon was not released until he "finally" decided to cooperate.  Hittle did not receive authorization for use of the chair.  Blackmon's allegations of Hittle's direct involvement in placing Blackmon in the chair, for an unknown amount of time and without seeking approval are sufficient to state a claim.

Defendant Hittle's motion to dismiss on the basis of qualified immunity is denied.

### F.   TAYLOR

Defendant Kirk Taylor was a Mental Health Professional at JDF. Taylor was involved in numerous instances in which the restraint chair was used.  Blackmon has alleged that Taylor failed to use proper professional judgment by subjecting him to inappropriate sanctions and failed to care for Blackmon's psychological well being.  Based on the extensive allegations of Taylor's involvement the court finds that Blackmon has sufficiently stated a claim against Taylor.

Defendant Taylor's motion to dismiss on the basis of qualified immunity is denied.

### G.   FITZJARRALD

Defendant Fitzjarrald was also a Mental Health Professional at

-14-

JDF and primarily involved in the use of the restraint chair on February 9, 1997. On that occasion, Blackmon alleges that Fitzjarrald was contacted regarding Blackmon's threats to hurt himself and staff advised her that the restraint chair would be used. Fitzjarrald failed to offer any other suggestions and did not attempt to visit Blackmon to calm him down. Ultimately, staff had to call Fitzjarrald again and request her presence after Blackmon had been in the chair for more than one hour. Blackmon also alleges that Fitzjarrald failed to recognize his mental state and appropriately care for him while he was confined at JDF. The court finds that these allegations are sufficient to state a claim against Fitzjarrald.

Fitzjarrald's motion to dismiss on the basis of qualified immunity is denied.

**IV. CONCLUSION**

Defendants motions to dismiss are denied in part and granted in part. Defendant Masterson's motion to dismiss is granted (Doc. 47).[7] Defendants Sutton, Tyson and Fitzjarrald's motion to dismiss is denied (Doc. 47). Defendant Taylor's motion to dismiss is denied (Doc. 54). Defendants Guiterrez and Hittle's motion to dismiss is denied (Doc. 65).

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established.

---

[7] Pursuant to United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), the court declines to exercise pendent jurisdiction over plaintiff's state law claims against Masterson. Therefore, these claims are dismissed as well. See Gibbs, 383 U.S. at 726 (stating that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

-15-

A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

        IT IS SO ORDERED.

        Dated this __17th__ day of January 2007, at Wichita, Kansas.


                                s/ Monti Belot
                                Monti L. Belot
                                UNITED STATES DISTRICT JUDGE