IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
BRANDON BLACKMON,              )
                               )
                   Plaintiff,  )   CIVIL ACTION
                               )
v.                             )   No.  05-1029-MLB
                               )
MARLA SUTTON, et al.,          )
                               )
                   Defendants. )
                               )
```

**MEMORANDUM AND ORDER**

This case comes before the court on both plaintiff's and defendants' motions in limine. (Docs. 342, 344). The motions have been fully briefed and are ripe for decision. (Docs. 343, 345, 348, 353, 358).

All parties seek to prohibit the admission of certain evidence at trial. To the extent it can with the information before it, the court will briefly rule on each motion. The court cautions the parties, however, that nothing in this order will preclude the admissibility of the excluded evidence if it otherwise becomes relevant at trial. See Turley v. State Farm Mut. Ins. Co., 944 F.2d 669, 673 (10th Cir. 1991) ("The better practice would seem to be that evidence of this nature . . . should await development of the trial itself."). By the same taken, nothing said herein should be constituted as a final ruling admitting evidence to which a valid objection is made at trial.

**Analysis**

The facts of this case are set forth in the court's Memorandum and Order issued on June 29, 2012 (Doc. 318) and the Tenth Circuit's

opinion of November 8, 2013 (Doc. 336). Blackmon brings section 1983 claims alleging Eighth Amendment violations which occurred during his incarceration at the Juvenile Detention Facility (JDF) in Wichita, Kansas from January 31, 1997 to May 7, 1997.

**I.    Blackmon's Motion in Limine (Doc. 342)**

    **A.    Underlying Charges**

Blackmon moves to exclude his charges of rape and writing in wet cement which ultimately led to his placement in JDF custody. Blackmon asserts that the charges are not relevant to the issues in the case. The court disagrees. The events in this case all stem from Blackmon's placement in custody during the judicial proceedings in the rape and wet cement cases. While the charges may be prejudicial to Blackmon, the jury will be informed of all aspects of Blackmon's criminal cases including the Kansas Supreme Court's reversal of Blackmon's rape conviction.

Blackmon's motion is overruled.

    **B.    Blackmon's Life after May 7, 1997**

Blackmon moves to limit the evidence of the events in this case to the time period he was incarcerated at JDF. Blackmon does not seek any damages for any lasting psychological injury as a result of his incarceration. Defendants do not object to this limitation. Defendants, however, seek to impeach Blackmon with his two felony convictions which occurred in 2006 and 2011. The crimes Blackmon committed were aggravated battery and intimidation of a witness, neither of which involved dishonesty or false statment. Fed. R. Evid. 609(a). The crimes happened nine and fourteen years, respectively, <u>after</u> the events in this case. While the crimes could be relevant to

Blackmon's credibility as a witness,[1] the evidence will be highly prejudicial to Blackmon.

Blackmon's motion to exclude the convictions is sustained. Fed. R. Evid. 403.

### C.  CASA Report

Blackmon seeks to exclude the CASA report that was prepared by the Court Appointed Special Advocate in juvenile court. The report was prepared by Max Every, who is now deceased. Every compiled the report after questioning Blackmon, Blackmon's family members, teachers and neighbors. Blackmon contends that the report is inadmissible hearsay. The court agrees that the report itself is inadmissible. Defendants, however, may question Blackmon's experts regarding the report during cross-examination. Fed. R. Evid. 703.

### D.  SRS Custody and Margo Crile

Blackmon moves to exclude any evidence that Blackmon was in SRS custody prior to his placement at JDF. Blackmon does not identify why this evidence is not relevant.[2] Defendants plan to present evidence that Crile was involved in Blackmon's mental health treatment at JDF. The fact that he was in SRS custody and that Crile was working as his caseworker is relevant and admissible.

### E.  Prior Settlements

Blackmon's motion is sustained.

---

[1] The jurors just as likely could believe that Blackmon's criminal problems were a result of his treatment at JDF.

[2] In his reply, Blackmon states that he addressed this issue and cites to page 6 of Document 348. That section discusses medical payments and does not address the issues of the admissibility of Blackmon's placement in SRS custody and Crile's status as his caseworker.

**F.   Family Life Before JDF Placement**

Blackmon seeks to exclude any evidence of his personal, medical, social and family history prior to January 31, 1997. Blackmon, however, seeks damages for psychological injuries which occurred while incarcerated. Therefore, the state of Blackmon's mental health prior to his custody is admissible.

**II.   Defendants' Motion in Limine (Doc. 344)**

**A.   JDF Policies and Regulations**

Defendants move to exclude JDF policies regarding the use of restraints, suicide and detention on the basis that they will not be relevant to the issues which will be decided by the jury, citing Tanberg v. Sholtis, 401 F.3d 1151 (10th Cir. 2005). In Tanberg, the Tenth Circuit upheld the exclusion of a police department policy which stated, in part, that "officers shall use only that force which is reasonable and necessary to effect lawful objectives." Tanberg, 401 F.3d at 1163. While the Tanberg decision does state that a violation of a policy is insufficient to establish a violation of section 1983, citing Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Circuit did not hold that departmental policies are never admissible in civil rights cases.

In Lopez v. LeMaster, 172 F.3d 756, 761 (10th Cir. 1999), the Tenth Circuit discussed jail policies regarding supervision of prisoners in the context of a deliberate indifference claim. In discussing the applicability of the policies, the Circuit reasoned as follows:

> While these standards do not establish constitutional parameters for the reasonable measures necessary to insure inmate safety, they do provide persuasive authority

-4-

> concerning what is required. As will be seen, the record contains ample evidence from which a finder of fact could conclude that these standards were violated, that failure to adhere to them posed a substantial risk of harm, and that [defendant] knew of the dangerous conditions prevalent at the Jackson County jail, but failed to take reasonable measures to insure the safety of prisoners within his care.

Lopez, 172 F.3d at 761. The Circuit then upheld the decision denying the defendant qualified immunity.

In this case, as noted in this court's prior order, there is evidence that the policies regarding restraints, suicide and detention are in place for the safety of the inmates and prison staff. While a violation of a policy does not equate to a constitutional violation, and the court will instruct the jury as such, a jury could find that the failure to comply with the policies posed a substantial risk of harm to Blackmon.

Moreover, after being questioned by the court, defense counsel acknowledged that defendants will testify that their actions with respect to Blackmon were taken pursuant to JDF policies. Therefore, defendants cannot defend their actions based on departmental policy and yet seek to exclude evidence that they also failed to comply with those policies.

The court finds that the evidence of the departmental policies pertaining to suicide, detention and restraints is admissible and relevant to Blackmon's claims against defendants. Counsel may submit proposed instructions concerning the policies.

**B.   Restraint Chairs used as Torture Devices**

Defendants' motion is sustained.

**C.   Blackmon's Medical Expenses after March 1997**

Blackmon seeks damages in the amount of $8713.99 for medical

-5-

expenses which were incurred after March 1997. Defendants move to exclude this evidence on the basis that the expenses were incurred when Blackmon was in the custody of SRS and those expenses were claimed in the companion case against the state which was dismissed pursuant to a settlement agreement. Blackmon responds that there is no evidence that the medical expenses were specifically reimbursed in the lump sum settlement he received from the state. Blackmon, however, seeks to exclude any evidence of his prior settlement.

The evidence in this case will focus on Blackmon's treatment by the JDF staff during the first half of 1997. The medical expenses and the issue of whether they were reimbursed will take the focus away from the real issues in this case. Defendants' motion to exclude the expenses is sustained. Fed. R. Evid. 403.

**D.   Expert Opinions Regarding Continuing Psychological Injury**

Blackmon responds that he will not seek to introduce this evidence. Therefore, defendants' motion is sustained.

**E.   Sedgwick County**

Defendants seek to exclude any evidence that Sedgwick County will indemnify the individual defendants. Blackmon responds that this evidence is admissible and relevant to his punitive damages claim and cites to Perrin v. Anderson, 784 F.2d 1040, 1047-48 (10th Cir. 1986). Perrin, however, does not hold that evidence of the identity of an indemnitor is admissible in a punitive damages case.

Defendants' motion is taken under advisement.

**F.   Use of the Restraint Chair on March 17, 1997**

Defendants move to exclude evidence that the restraint chair was used on March 17 on the basis that Abel Tsimonjela, the employee who

placed Blackmon in restraints on that date, is deceased. Blackmon responds that the evidence of this restraint is admissible because Tsimonjela's actions were directed by Taylor who made a note to use the chair to "punish" Blackmon. Blackmon also contends that Taylor, Fitzjarrald and Sutton all had knowledge of the incident and did not evaluate it.

The court finds that the use of the restraint chair on March 17 is relevant to Blackmon's claim of deliberate indifference. Defendants' motion is overruled.

### G. Racial Animus

Defendants seek to exclude any evidence that they treated Blackmon harshly because of his race. Defendants do not specify the evidence they seek to exclude. Blackmon responds that he will introduce evidence that Dr. Chaffin was surprised that Blackmon was depressed because she did not think black children got depressed. Dr. Chaffin, however, is not named as a defendant. Blackmon does not explain how Dr. Chaffin's beliefs had any impact on the treatment by defendants. Therefore, this statement will not be admitted. Rule 403.

### H. Witness Contact

Defendants seek to prohibit Blackmon from contact with witnesses, with the exception of his family, on the basis that Blackmon is a violent felon who was only recently released from prison. Blackmon agrees to not contact defendants but responds that he should be able to contact his witnesses, including his experts.

Blackmon's lawyers may contact his witnesses listed in section 1a., with the exception of defendants. Blackmon may not contact any

Sedgwick County current or past employee identified in section 1b.

     IT IS SO ORDERED.

     Dated this  29th   day of September 2014, at Wichita, Kansas.

                                  s/ Monti Belot
                                  Monti L. Belot
                                  UNITED STATES DISTRICT JUDGE