IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
BRANDON BLACKMON,              )
                               )
                  Plaintiff,   )   CIVIL ACTION
                               )
v.                             )   No.  05-1029-MLB
                               )
MARLA SUTTON, et al.,          )
                               )
                  Defendants.  )
                               )
```

**MEMORANDUM AND ORDER**

This case comes before the court on plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A).  (Doc. 419).  The motion has been fully briefed and is ripe for decision. (Docs. 420, 421, 422).  Plaintiff's motion is denied for the reasons herein.

**I.   Background**

Plaintiff brought section 1983 claims alleging Eighth Amendment violations which occurred during his detention at the Juvenile Detention Facility (JDF) in Wichita, Kansas from January 31, 1997 to May 7, 1997.  This case was tried to a jury in mid-October 2014.

During the two week trial, the jury heard evidence from twenty-four expert and lay witnesses.  The jury learned that plaintiff, as an eleven-year old boy, was detained at JDF after being charged with rape. During his detention, defendants, Marla Sutton, Natasha Tyson-Martin, Keith Gutierrez, John Hittle, Kirk Taylor and Joan Fitzjarrald, all JDF employees, utilized physical restraints and a restraint chair when plaintiff threatened or exhibited signs of self harm.  Plaintiff contended that the restraints were used as punishment and not for a legitimate penological purpose.  Defendants testified

that they utilized the restraints to keep plaintiff from harming himself. Plaintiff further claimed that Sutton, Taylor and Fitzjarrald were deliberately indifferent to his mental health needs.

The jury returned a verdict in favor of defendants finding that defendants did not violate plaintiff's constitutional rights. Plaintiff moves for a new trial on four grounds: 1) the court erred in dismissing defendant Masterson in its January 17, 2007 order (Doc. 113); 2) the court erred in entering summary judgment in favor of defendant Sedgwick County (Doc. 318); 3) the court erred in allowing evidence of plaintiff's rape adjudication and 4) the verdict was against the weight of the evidence.[1]

**II. Analysis**

    **A. Masterson**

Plaintiff contends that the court erred in dismissing Masterson in January 2007 and that this error "becomes obvious in light of Masterson's testimony at trial that he was responsible for supervision of the JDF mental health staff until February 18, 1997)." (Doc. 420 at 1).[2] Plaintiff's motion as to Masterson (and the county) is actually a motion to alter or amend judgment pursuant to Rule 59(e).

The purpose of a Rule 59(e) motion is to "correct manifest errors of law or to present newly discovered evidence." Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994). "Grounds for granting

---

[1] Plaintiff moves for a new trial on his claims against defendants Marla Sutton, Natasha Tyson-Martin, Kirk Taylor and Joan Fitzjarrald. Plaintiff does not seek a new trial as to his claims against Keith Gutierrez and John Hittle. (Doc. 420 n. 1).

[2] After Masterson's testimony at trial, plaintiff made a similar motion to reconsider. Plaintiff, however, withdrew his motion prior to the court issuing a ruling. (Doc. 382).

-2-

a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." <u>Somerlott v. Cherokee Nation Distributors, Inc.</u>, 686 F.3d 1144, 1153 (10th Cir. 2012).

Plaintiff's motion essentially argues that the court's order must be set aside due to clear error and newly discovered evidence. Plaintiff argues that the court erred in dismissing Masterson because plaintiff did allege specific facts against Masterson in his amended complaint. The court disagrees. As noted in its 2007 order, the only specific allegation concerning Masterson was his involvement in the decision to place plaintiff at JDF. The court held that those allegations were not sufficient to state a claim.[3] The remaining allegations concerning Masteron's involvement in the use of restraints were conclusory and non-specific. Plaintiff alleged that "defendants acquiesced in, approved, or tolerated JDF staff's failure to exercise professional judgment in the continuing confinement of a child of Brandon's age using behavior management techniques that were inappropriate under the circumstances and which led to Brandon's deteriorating mental state." (Doc. 87, ¶ 92). Plaintiff never alleged how Masterson acquiesced in or approved of the actions of his employees. With respect to Sutton, who assumed Masterson's position, however, plaintiff made specific allegations, including the fact that Sutton authorized the use of restraints on multiple occasions. <u>Id.</u>

---

[3] The Tenth Circuit held that plaintiff's placement at JDF, in and of itself, did not violate plaintiff's constitutional rights. <u>Blackmon v. Sutton</u>, 734 F.3d 1237, 1246-47 (10th Cir. 2013).

-3-

at ¶ 94. Therefore, plaintiff has failed to establish that this court's decision was in error.

Plaintiff further contends that Masterson's testimony at trial uncovered evidence of his personal participation in the constitutional violations, i.e. that Masterson was the director of JDF during part of plaintiff's detention. That evidence, however, is not newly discovered. To support a Rule 59(e) motion, the moving party must show "(1) that the evidence is newly discovered, or (2) if the evidence was available at the time summary judgment was granted, that counsel made a diligent yet unsuccessful attempt to discover the evidence." Webber, 43 F.3d at 1345. Masterson's deposition was taken in 2010 and 2011. Masterson's deposition testimony discussed his role at supervisor at JDF and the dates involved. (Doc. 279, exh. 4 at 63-65). The deposition testimony also covered his purchase of the restraint chair and his development of JDF policies. (Id. at 62-65, 135-137). Therefore, plaintiff had knowledge of Masterson's role in 2010 and 2011 and failed to move for reconsideration or to amend his complaint. Plaintiff cannot seek relief from the judgment on the basis that trial evidence of Masterson's involvement is newly discovered evidence.

Plaintiff's motion to alter or amend the judgment on this basis is denied.

**B. Sedgwick County**

Plaintiff moves to alter or amend this court's order granting summary judgment in favor of Sedgwick County on the basis that the court erred in holding that plaintiff failed to establish that Sedgwick County acquiesced in the constitutional violations. (Doc.

420 at 7).  Plaintiff's motion fails to cite any authority in support of his position.  Nevertheless, the court must deny plaintiff's motion to alter or amend the judgment as a result of the jury's verdict.  The Tenth Circuit has repeatedly held that a "municipality cannot be liable under § 1983 for its employees' actions (here, excessive force) if a jury finds that the municipal employee committed no constitutional violation."  See Trigalet v. City of Tulsa, Okla., 239 F.3d 1150, 1154 (10th Cir. 2001).[4]

### C. Underlying Crime

Plaintiff moves for a new trial on the basis that the admission of his juvenile rape adjudication constituted prejudicial error. "[A] new trial may be granted if the district court concludes the 'claimed error substantially and adversely' affected the party's rights." Henning v. Union Pacific R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008). A district court may not grant a new trial without a finding of prejudicial error or substantial injustice.  Stewart v. South Kansas and Okla. R.R., Inc., 36 F. Supp.2d 919, 920 (D. Kan. 1999) ("Neither an error in the admission or exclusion of evidence nor an error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties.")  When determining whether a trial error is prejudicial, the court should "ignore errors that do not affect the essential fairness of the trial"

---

[4] Notwithstanding the jury verdict, the court would deny plaintiff's motion. Plaintiff does not cite to any evidence in the summary judgment record to support a finding that Masterson made a conscious, affirmative decision to approve defendants' actions. City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915 (1988).

or the substantial rights of the parties. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984); see also Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). "An error affects a party's substantial rights if it altered the outcome of the proceedings or produced a contrary result." Smith v. Cochran, No. 04-5114, 2006 WL 1755932, *3 (10th Cir. 1006)(citing Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 802–803 (10th Cir. 2005).

Plaintiff contends that it was prejudicial error to admit the rape adjudication because it was not relevant to the issues before the jury. The court disagrees. The admissibility of the rape adjudication was raised in a motion in limine (Docs. 342 and 343). The motion was denied. (Doc. 361). It was the court's view that because the entire case centered around plaintiff's confinement at JDF, the better course was to inform the jury about the reason why plaintiff was confined, and the ultimate reversal of the adjudication, rather than to leave the matter to the jurors' speculation. This was particularly so in view of evidence, which the court knew would come in, that plaintiff was by far the youngest and smallest inmate at JDF and that the jurors would wonder why he was placed there.

So, at the very beginning of the case, the court informed the jury regarding the adjudication and the reversal. Plaintiff's counsel questioned the panel during voir dire about these matters. During the trial, the rape allegation itself did not play a dominant role. The factual allegations concerning the rape charge were not presented to the jury. Defendants did not focus on the rape nor did they attempt

to turn the focus of the trial to the rape. Defendants introduced evidence through mental health providers that plaintiff's depression and mental suffering was the result of the criminal proceedings, adjudication and separation from his mother, not defendants' conduct. The mental health providers testified that plaintiff's incidents of self-harm coincided with the state court hearings. Therefore, the rape adjudication was relevant to an issue which was presented to the jury.

The jury was instruction that in the event the it found that plaintiff had established a constitutional violation by one or more defendant, the jury also had to consider whether plaintiff suffered damages, including psychological injury and/or mental suffering. (Inst. 12). Therefore, in light of the evidence of the Supreme Court's reversal of plaintiff's adjudication and the fact that plaintiff's psychological injuries were contested, the prejudicial effect of the rape charge was not outweighed by its relevance. Fed. R. Evid. 403.

Disappointment with a jury's verdict is understandable. This is especially so in view of the time, effort and expense plaintiff's counsel put forth in representing their client, which have been extraordinary by any measure. Nevertheless, plaintiff has failed to establish that if the admission of the rape adjudication was error, that it altered the outcome of the proceedings, i.e. that without the evidence of the rape charge, "there would have been a contrary result." Sanjuan v. IPB, Inc., 160 F.3d 1291, 1296 (10th Cir. 1998). While an allegation of rape is serious and could be prejudicial, the court and the parties limited the extent of the evidence concerning

-7-

the adjudication. "This was not a case where the defendants were permitted to harp on the plaintiff's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue to the plaintiff's conviction in a prior case." See Geitz v. Lindsey, 893 F.2d 148, 150-151 (7th Cir. 1990). This was a long trial with many witnesses, hardly any of whom even mentioned the rape adjudication. It is contrary to common sense that after hearing approximately two weeks of evidence, the jurors essentially said "we don't care about the evidence and the court's instructions; we're going to find for the defendants because plaintiff was charged with rape almost 20 years ago."

Only because plaintiff makes the argument, the court will address the Carr case.[5] Plaintiff argues that the introduction of the adjudication caused irreparable prejudice and the fact that his adjudication was reversed may have made "it worse" due to the "reputation" of the Kansas Supreme Court. (Doc. 420 at 9-10). Plaintiff argues that the Kansas Supreme Court's integrity was called into question after a long-delayed decision (12 years) concerning the Carr brothers. The Carr brothers' case was decided by the Kansas Supreme Court three months prior to the trial. Plaintiff was free to voir dire the jury panel on its feeling towards the Supreme Court and he did not do so. The court will not presume that the jury reached its verdict based on the public's alleged dislike of the Kansas Supreme Court.

Plaintiff goes even further, pointing out that during the trial,

---

[5] See Kansas v. Carr, 329 P.3d 1195 (Kan. 2014).

the Kansas governor, in inappropriate but entirely predictable statements, criticized the Supreme Court's decision as part of his campaign. These were reported by the media. If plaintiff was concerned about the effect the governor's remarks might have on the jury, he did not mention it or ask the court for some sort of cautionary instruction. Again, it is rank speculation that the jury's decision was some sort of message intended to "punish" so-called "activist" judges comprising the Kansas Supreme Court.[6]

Therefore, plaintiff's motion for a new trial on the basis that the court erred in admitting the evidence of the rape charge is denied.

### D. Against the Weight of the Evidence

Finally, plaintiff moves for a new trial on the basis that the verdict was against the weight of the evidence. "The court may, on motion, grant a new trial on all or some of the issues--and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a). A motion for new trial should not be granted unless "the court believes the verdict is against the weight of the evidence." Wirtz v. Kansas Farm Bureau Servs., Inc., 311 F. Supp.2d 1197, 1226 (D. Kan. 2004). Plaintiff bears the "burden of demonstrating that the verdict was clearly, decidedly, or

---

[6] Plaintiff points out that his counsel's post-trial request to interview the jurors was denied. (Doc. 422 at 4). Each juror was polled in open court after the verdict was announced and each agreed with the verdict. Allowing jury interviews is solely within the court's discretion. Fed. R. Evid. 606(b) and D. Kan. Rule 47.1. This court has never in any case allowed lawyers to interview jurors after the verdict has been announced.

-9-

overwhelmingly against the weight of the evidence." <u>Blanke v. Alexander</u>, 152 F.3d 1224, 1236 (10th Cir. 1998). In reviewing the motion for new trial, the court must view the evidence in the light most favorable to defendants, the prevailing party. <u>Griffin v. Strong</u>, 983 F.2d 1544, 1546 (10th Cir. 1993). The court must bear in mind that "determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact" are functions within the sole province of the jury. <u>Veile v. Martinson</u>, 258 F.3d 1180, 1190-91 (10th Cir. 2001).

**1. Restraint Chair**

Plaintiff argues that the jury verdict on his claim for punishment was against the weight of the evidence. The pertinent jury instruction, which is unchallenged, is as follows:

> The Fourteenth Amendment to the United States Constitution, which guarantees a juvenile detainee due process, prohibits punishment of a juvenile detainee, i.e. a juvenile who is being detained pending resolution of the juvenile's case.
>
> Your verdict must be for Brandon Blackmon and against one or more of the defendants – Natasha Tyson, Keith Gutierrez, John Hittle, Kirk Taylor, Joan Fitzjarrald, and/or Marla Sutton – if all the following elements have been proved:
>
> First: one or more of the defendants – Tyson, Gutierrez, Hittle, Taylor, Fitzjarrald, and/or Sutton – used force in restraining Blackmon by use of a restraint chair, handcuffs, ankle chains, other forms of physical restraint, and isolated confinement;
>
> Second: the force used was excessive because it was used for punishment and without any legitimate penological purpose (i.e., it was not reasonably necessary to restore order, maintain discipline in JDF or to protect Blackmon from inflicting self harm); and
>
> Third: as a direct result, Blackmon suffered

-10-

psychological harm or physical injury. (Doc. 423, Inst. 6).

Plaintiff contends that the verdict is against the weight of the evidence because defendants failed to exhaust less restrictive forms of behavior management and failed to fully comply with JDF regulations. (Doc. 420 at 13-14). The unchallenged instruction, however, did not require the jury to determine whether defendants utilized the least restrictive form of behavior management. The jury was asked to determine if defendants restrained plaintiff as punishment and without <u>any</u> legitimate penological purpose. All defendants testified that they used the restraint chair to keep plaintiff from inflicting self harm, which is a legitimate penological purpose.

Plaintiff argues that defendants' testimony was self-serving. Of course, the same can be said about plaintiff's testimony. It would be a rare case, indeed, where a party's testimony was not "self-serving." Plaintiff's counsel extensively cross-examined defendants and were not restricted in any way from questioning defendants' credibility and "self-serving" interest in the outcome of the case. The jury was instructed, without objection, that it could consider a party's interest in the outcome of the case. (Doc. 423, Inst. 16).

The court must view the evidence in a light most favorable to defendants as the non-moving party without making credibility determinations. Based on the jury verdict, the court must conclude that the jury found credible defendants' testimony that their actions were not done to punish plaintiff but to protect him from hurting himself.

Plaintiff further argues that the verdict was against the weight of the evidence because plaintiff established that defendants violated JDF regulations and procedures. The jury was instructed that a failure to follow JDF regulations and procedures "is not conclusive on the issue of whether Blackmon's constitutional rights were or were not violated by any defendant." (Doc. 423, Inst. 11). Plaintiff does not challenge this instruction and it is a correct statement of the law. Lopez v. LeMaster, 172 F.3d 756, 761 (10th Cir. 1999). Therefore, the court finds that plaintiff has failed to establish that the jury's verdict on the restraint claim was "clearly, decidedly, or overwhelmingly against the weight of the evidence." Blanke, 152 F.3d 1224 at 1236.

Plaintiff's motion for a new trial on the punishment claim is denied.

**2. Deliberate Indifference**

Plaintiff contends that the jury verdict on the deliberate indifference claim was against the weight of the evidence because defendants did not follow regulations and failed to provide an emergency staffing and a mental health assessment. The instructions concerning plaintiff's deliberate indifference claim are as follows:

> Blackmon claims that Taylor, Sutton, and Fitzjarrald violated Blackmon's constitutional rights by showing a deliberate indifference to Blackmon's serious mental health need. In order to succeed on his claim, Blackmon must prove the following by a preponderance of the evidence:
>
> First: Blackmon had a serious mental health need,
>
> Second: Taylor, Sutton and/or Fitzjarrald were aware of Blackmon's need for mental health treatment,
>
> Third: Taylor, Sutton and/or Fitzjarrald, acted with

-12-

>     deliberate indifference, and
>
>     Fourth: as a direct result, Blackmon was damaged.

(Doc. 423, Inst. 7).

>     Deliberate indifference means: (1) a defendant had actual knowledge of a substantial risk to Blackmon's mental health and safety or (2) was aware of facts for which the inference could be drawn that a substantial risk of serious harm existed and a defendant drew that inference. Then, in either case, a defendant consciously failed to take reasonable measures to deal with the risk. Deliberate indifference is not established by negligence, which is the failure of a person to do something that a reasonable person would do, or it is doing something that a reasonable person would not do, under the same circumstances.

(Doc. 423, Inst. 9).

Plaintiff argues that the evidence showed that he had a serious mental health need and that defendants were deliberately indifferent to his need as shown by their failure to provide him with a staffing and mental health assessment. As stated previously, the failure to follow regulations, which required a staffing and mental health assessment, is not determinative. The jury was instructed to consider the regulations with all of the evidence. At this stage, the court must consider the evidence in a light most favorable to defendants. In construing the entirety of the evidence, the court is not convinced that the verdict was clearly against the weight of the evidence.

Sutton testified that defendants met and discussed plaintiff's mental health status on various occasions. During those informal meetings, defendants covered everything that would have been discussed in an emergency staffing but the meetings were not designated as such. While there was sufficient evidence in the record from which the jury could find that the meetings did not comply with the regulations

concerning emergency staffings, the failure to comply with regulations is not determinative on the deliberate indifference claim. The jury could have concluded that the lack of a mental health assessment and the failure to conduct an emergency staffing amounted to negligence, not deliberate indifference. In order to find deliberate indifference, defendants, or any of them, must have consciously failed to take reasonable measures to deal with the risk to plaintiff's mental health.

As cited by defendants, Fitzjarrald created a plan to care for plaintiff while he was in JDF. That plan included daily interaction with Fitzjarrald or Taylor. Plaintiff was also referred to Dr. Dorr for an assessment early in February 1997 after his repeated incidents of self-harm. After the assessment by Dr. Dorr, plaintiff's behavior improved. Defendants also presented evidence that plaintiff's self harming behavior coincided with hearings in his rape case and not a deterioration of mental health. For example, plaintiff increased the incidents of self-harm after the court trial in his rape case. Plaintiff was then transferred to Providence Hospital for observation.

Moreover, defendants argued that they established that plaintiff's mental health diagnoses was unchanged. Prior to his detention, plaintiff was diagnosed by a mental health professional as having an adjustment disorder. Defendants introduced evidence at trial that this diagnosis was unchanged and that plaintiff failed to establish that his mental health worsened during his detention. Based on this evidence, the jury could have concluded that defendants did not consciously disregard a risk to plaintiff's mental health.

Viewing the evidence in the light most favorable to defendants,

the court cannot conclude that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence. Accordingly, plaintiff's motion for a new trial on the claim of deliberate indifference is denied.

**III. Conclusion**

Plaintiff's motion for a new trial is denied. (Doc. 419).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 5 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 5 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 12th day of January 2015, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE